1  Alan P. Block
   California State Bar No. 143783
2  ablock@McKoolSmith.com
   **MCKOOL SMITH, P.C.**
3  300 S. Grand Avenue, Suite 2900
   Los Angeles, California 90071
4  Telephone: (213) 694-1200
   Facsimile: (213) 694-1234
5
6  Attorneys for Plaintiff
   PARUS Holdings, Inc.
7

8              **UNITED STATES DISTRICT COURT**

9      **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

10

| | |
|---|---|
| 11  ***In Re Subpoena* to [24]7.AI, Inc.,** | Misc Case No. 5:24-mc-80080 |
| 12 | |
| 13  PARUS HOLDINGS, INC. | **PARUS HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH SUBPOENA; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| 14                  Plaintiff, | |
| 15              v. | |
| 16  CHARLES SCHWAB & CO., INC., | Date: [_____] |
| 17                  Defendant. | Time: [_____] |
|  | Courtroom: [_____] |
| 18  PARUS HOLDINGS, INC. | *Filed Concurrently: Decl. of Justin Romberg; Proposed Order* |
| 19                  Plaintiff, | |
| 20              v. | **Underlying Action:** |
| 21  CAPITAL ONE, N.A., | Nos. 2:21-cv-00393-JRG (lead case); 2:21-cv-00395-JRG and 2:21-cv-00396-JRG (member caseS); U.S. District Court (E.D. Tex.) |
| 22                  Defendant. | |
| 23  PARUS HOLDINGS, INC. | Judge: Hon. Rodney Gilstrap |
| 24                  Plaintiff, | |
| 25              v. | |
| 26  FMR LLC D/B/A FIDELITY INVESTMENTS, | |
| 27                  Defendant. | |
| 28 | |

PARUS HOLDINGS, INC.'S MOTION TO COMPEL                                    CASE NO:

NOTICE OF MOTION AND MOTION TO COMPEL

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on _____ or the next available hearing date and time as ordered by the Court, PARUS Holdings, Inc., will and hereby does move under Federal Rule of Civil Procedure 45 for an Order compelling [24]7.AI, Inc. to produce the full scope of documents sought from it in a subpoena served on _____, 2024 in the underlying action of *PARUS Holdings, Inc. v. Charles Schwab & Co., Inc.*, Nos. 2:21-cv-00393-JRG (lead case); 2:21-cv-00395-JRG and 2:21-cv-00396-JRG (member cases); U.S. District Court (E.D. Tex.).

PARUS Holdings, Inc., respectfully requests an order requiring [24]7.AI, Inc. to fully comply with the subpoenas issued to it in the underlying action within fourteen (14) days. This Motion is based on this Notice of Motion and Motion, the attached supporting Memorandum of Points and Authorities, the concurrently filed Declaration of Justin Romberg and exhibits thereto, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion

DATED: April 1, 2024

Respectfully submitted,


By: */s/ Alan P. Block*

Alan P. Block
California State Bar No. 143783
ablock@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 S. Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

***ATTORNEYS FOR PLAINTIFF
PARUS HOLDINGS, INC.***

MCKOOL SMITH, P.C.
LOS ANGELES, CA

1

2

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND..................................................2

    A.    [24]7's Delaware Declaratory Judgment for Non-Infringement ................................ 2

    B.    Parus' Subpoena to [24]7 and Document Requests to Defendants............................. 2

    C.    Parus and [24]7 have an ongoing dispute regarding source code. ............................... 4

III.    LEGAL STANDARD ..................................................................................................5

    A.    Compulsion of Discovery .......................................................................................... 5

    B.    Transfer ...................................................................................................................... 6

IV.    ARGUMENT ...............................................................................................................7

    A.    The Eastern District of Texas is in a Better Position to Evaluate the Parties'
        Dispute ....................................................................................................................... 7

    B.    Parus' Requests Are Proportionate to the Needs of the Underlying Case. ................... 9

    C.    [24]7 Is A Financially Interested Third-Party............................................................ 10

    D.    The Entire Source Code is Discoverable Pursuant to Rule 26.................................... 10

        1.    Producing the Entire Source Code Will Not Harm [24]7. ............................... 11

        2.    Piecemeal Production of the Source Code Has Increased the Time and
            Expense to Analyze the Accused Products.................................................... 12

        3.    Human-Readable Formatting is Essential, Available, and Necessary............. 14

        4.    The ███████████████████████████████
            ████████████████████████. ............................... 16

V.    CONCLUSION...........................................................................................................17

1

2

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*[24]7.ai v. Parus*,
   No. 1:22-cv-00159, Dkt. 14 (D. Del. filed June 8, 2022) (attached as Ex. 3). [24]..................2

*[24]7.ai, Inc. v. Parus Holdings, Inc.*,
   No. 1:22-cv-00159, Dkt. 1 (D. Del. filed Feb. 3, 2022) (attached as Ex.1).............................1

*Beinin v. Ctr. for Study of Popular Culture*,
   No. 06-cv-02298 JW (RS), 2007 WL 832962 (N.D. Cal. 2007) ...............................5

*Cornell v. Columbus McKinnon Corp.*,
   No. 13-cv-02188-SI, 2015 U.S. Dist. LEXIS 105450 (N.D. Cal. 2015) ...............................10

*Drone Techs, Inc. v. Parrot S.A.*,
   838 F.3d 1283 (Fed. Cir. 2016)........................................................6

*F.D.I.C. v. Everest Reinsurance Holdings*,
   No. 1:13-MC-381, 2014 WL 260589 (S.D.N.Y. Jan. 23, 2014)...............................7

*Forterra Sys. v. Avatar Factory*,
   No. C-05-04472 PVT, 2002 U.S. Dist. LEXIS 63100 (N.D. Cal. Aug. 22, 2006)...........11, 12

*Google LLC v. Uniloc USA, Inc.*,
   No. 1:20-MC-0243, 2020 WL 1667376 (W.D. Tex. Apr. 3, 2020).............................7

*MAO-MSP Recovery II LLC, et al. v. Mercury General Corp.*,
   No. 1:19-MC-91176-ADB, 2020 WL 5732332 (D. Mass. Sep. 24, 2020)..........................7, 8

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*,
   301 F.R.D. 426 (N.D. Cal. 2014)........................................................7

*MVS Studio Inc. v. Bingo Bean, LLC*,
   No. CV 10-07675 JHN SSX, 2011 WL 10538669 (C.D. Cal. June 24, 2011)........................6

*Parus Holdings, Inc. v. Charles Schwab Corp. et al.*,
   No. 2:21-cv-00393, Dkt. 8 (E.D. Tex. filed Dec. 10, 2021) .................................2

*Parus v. Schwab*,
   No. 2:21-cv-00393, Dkt. 122 (E.D. Tex. dated Nov. 2, 2022) ................................4

*Parus v. Schwab*,
   No. 2:21-cv-00393, Dkt. 124 (E.D. Tex.)................................................2

*Parus v. Schwab*,
   No. 2:21-cv-00393, Dkt. 126 (E.D. Tex.)................................................2

MCKOOL SMITH, P.C.
LOS ANGELES, CA

*Parus v. Schwab*,
  No. 2:21-cv-00393, Dkt. 127-1 (E.D. Tex. filed Oct. 3, 2023) ...................................4

*Parus v. Schwab*,
  No. 2:21-cv-00393, Dkt. 128 (E.D. Tex.) .................................................................4

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*,
  813 F.2d 1207 (Fed. Cir. 1987).................................................................................6

*Vinton Steel, LLC v. Commercial Metals Co.*,
  No. 3:22-MC-452, 2023 WL 2518881 (W.D. Tex. Mar. 14, 2023) ..........................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b) ......................................................................................................10

Fed. R. Civ. P. 26(b)(1)...............................................................................................5, 9

Fed. R. Civ. P. 26(b)(2)(B) ..............................................................................................6

Fed. R. Civ. P. 45 ...................................................................................................3, 5, 10

Fed. R. Civ. P. 45 45(a)(1)(A)(iii) ..................................................................................5

Fed. R. Civ. P. 45(d)(1)...........................................................................................6, 10

Fed. R. Civ. P. 45(d)(2)(B)(i) ..........................................................................................1

**I.      INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure 45(d)(2)(B)(i), Movant Parus Holdings, Inc. ("Parus") respectfully requests that the Court compel Respondent [24]7.ai, Inc. to comply with a subpoena by producing documents and source code relevant to two patent infringement lawsuits pending in the Eastern District of Texas (the "Eastern District of Texas litigations") against Capital One and Fidelity involving U.S. Patent No. 7,327,723 (the "Asserted Patent") for which [24]7.ai, Inc. ("[24]7") solely possesses the relevant source code for the Accused Products.

Respondent [24]7 is not a disinterested party. It is the company that provided the interactive voice recognition software used by the Defendants to create the systems accused of infringement in the Eastern District of Texas litigations. [24]7 is also indemnifying Defendants Capital One and Fidelity in the Eastern District of Texas litigations. Indeed, in a separate Delaware declaratory judgment action filed by [24]7 against Parus, [24]7 contended that, "[s]hould Parus prevail on its infringement claims against Capital One and Fidelity, [24]7 would suffer harm, including pecuniary loss, loss of prospective business relations with its IVR customers, and uncertainty surrounding the use of IVR platform by its customers." *[24]7.ai, Inc. v. Parus Holdings, Inc.*, No. 1:22-cv-00159, Dkt. 1 at ¶ 11 (D. Del. filed Feb. 3, 2022) (attached as Ex.1). In response to Parus' subpoena, [24]7 refuses to provide a fulsome production of its source code, despite its claims that such code would show non-infringement.

Accordingly, Parus now seeks an order from this Court (or a transfer of this issue to the Eastern District of Texas) to compel the production of narrow source code requests that are centrally relevant to the Eastern District of Texas litigations: (1) ███████ in a human readable format **or** ████████████████████████████████;[1] (2) ██████████████████████████ ██████████████████████; and (3) ██████████████████████████████████

---

[1] Alternatively, based upon [24]7's documents, ██████████████████████████████ While Parus contends that the less-burdensome option would be for [24]7 to produce the converted files, Parus has also offered to convert the files for [24]7, ████████████████████████ ███████████. *See* Ex. 2 at I.3, I.4 and I.8.

McKool Smith, P.C.
Los Angeles, CA

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2021, Parus filed four separate lawsuits in the Eastern District of Texas against Fidelity, Capital One, Bank of America, and Charles Schwab asserting infringement of Parus' U.S. Patent No. 7,327,723.[2] On December 10, 2021, the Eastern District of Texas court consolidated the four cases for pre-trial purposes. *Parus Holdings, Inc. v. Charles Schwab Corp. et al.*, No. 2:21-cv-00393, Dkt. 8 (E.D. Tex. filed Dec. 10, 2021).

### A.    [24]7's Delaware Declaratory Judgment for Non-Infringement

On February 3, 2022, [24]7 filed a complaint for declaratory judgment of non-infringement of the Asserted Patent in the District of Delaware. [24]7 alleged that "**[a]ll necessary software and hardware** used to provide [24]7's IVR product to Capital One's and Fidelity's respective customers is owned, controlled, and/or maintained by [24]7 at data centers located in California and Virginia and/or in one or more proprietary code repositories." Ex.1 at ¶ 8 (emphasis added). Additionally, "[24]7 is informed and believes, and based thereon allege, that the 'accused instrumentalities' referenced by Parus in its infringement allegations against Capital One and Fidelity in the respective Texas Cases includes [24]7's IVR product that [24]7 provided pursuant to [24]7's contractual agreements with Capital One and Fidelity." *Id.* at ¶ 10. Furthermore, [24]7 later clarified that they have "contractual obligations to indemnify all their customers for third-party patent infringement claims that are directed toward [24]7's IVR platform and services." *[24]7.ai v. Parus,* No. 1:22-cv-00159, Dkt. 14 at 4 (D. Del. filed June 8, 2022) (attached as Ex. 3). [24]7 accepted demands from Fidelity and Capital One on, respectively, January 4, 2022 and November 18, 2021. *Id.* at 5. Parus first became aware of this indemnity obligation on May 20, 2022, over three-months after [24]7 filed for declaratory judgment. *Id.* at 7.

### B.    Parus' Subpoena to [24]7 and Document Requests to Defendants

Parus' June 17, 2022 production request letter (pursuant to the Eastern District of Texas local rules) to all Defendants included a request for source code: "7. All documents, concerning the

---

[2] Charles Schwab and Bank of America, upon information and belief, are not customers of [24]7. Charles Schwab was voluntarily dismissed on February 6, 2023. *Parus v. Schwab*, No. 2:21-cv-00393, Dkt. 126 (E.D. Tex.). Bank of America was voluntary dismissed on February 1, 2023. *Parus v. Schwab*, No. 2:21-cv-00393, Dkt. 124 (E.D. Tex.).

McKOOL SMITH, P.C.
LOS ANGELES, CA

Accused Instrumentalities, including in source code… format." Ex.4. On August 19, 2022, Parus served a subpoena on [24]7 pursuant to Fed. R. Civ. P. 45 for the production of documents and testimony. Ex. 5. The "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" requested various categories of documents, "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms," including:

>   1. For each Accused Product, documents sufficient to show:
>
>   …
>
>   > b. The computer and network infrastructure that comprises or supports each Accused Product, including data centers, servers, network devices and communications equipment.
>
>   2. All documents pertaining to the design, development, structure, uses, features, operation, implementation, and functionality of the Accused Product, including:
>
>   > a. All specifications, requirement documents, design documents, user guides and other documents describing the design, development, installation and operation;
>   >
>   > b. The improvements, additions, new features, new functionalities, updates, or revisions since the Accused Product was initially commercialized (including before the Damages Period), including the reasons, justifications, analyses or bases for them;
>   >
>   > c. All potential configurations; and
>
>   …

*Id.* at 4, 6, and 21.

[24]7 objected to Parus' subpoena, contending that: "It is also unclear how such information is relevant and proportional to the needs of the case where Parus has only asserted direct infringement claims against Fidelity and COBNA and is only seeking a reasonable royalty from them." Ex. 6 at 12. However, as [24]7 admits, **"[a]ll necessary software and hardware** used to provide [24]7's IVR product to Capital One's and Fidelity's respective customers is owned, controlled, and/or maintained by [24]7." Ex. 1 at ¶ 8 (emphasis added). Parus continued to request

McKool Smith, P.C.
Los Angeles, CA

that Fidelity and Capital One produce source code, through communications with the counsel whom Defendants share with [24]7. *See, e.g.,* Ex. 7. In fact, it was not until January 19, 2024 that Parus became fully aware that the source code was almost *entirely* within the possession of [24]7. *See, e.g.*, Ex. 8.

After receiving [24]7's responses and objections to Parus' subpoena, Parus sent a communication to [24]7 on September 9, 2022 requesting a meet and confer and informing [24]7 of its obligations to produce discovery. Ex. 9 at 1. Parus met with counsel for [24]7 on September 26, 2022 and October 21, 2022 to discuss [24]7's objections. Ex. 10; Ex. 11. Finally, after "Parus' letters dated September 27, 2022 and October 14, 2022 … [and] numerous email exchanges and meet and confers regarding the same," counsel for [24]7, Capital One, and Fidelity[3] stated that "nonparty [24]7.ai ha[d] made available thousands of source code files, which provide additional information about the technical operation of the accused IVR system." Ex. 12. This code had only been made available eight days prior to this communication and after Parus subpoenaed [24]7. *See infra* II.C; Ex. 13. Parus immediately stated that it intended to review [24]7's source code. *Id.*

Shortly thereafter, the Eastern District of Texas court stayed the case pending *ex parte* reexamination of the Asserted Patent. *Parus v. Schwab*, No. 2:21-cv-00393, Dkt. 122 (E.D. Tex. dated Nov. 2, 2022). At the same time, [24]7 voluntarily dismissed its Delaware suit on November 10, 2022 pending resolution of the *ex parte* reexamination of the Asserted Patent.

Pursuant to the *ex parte* reexamination, the Patent Office affirmed the patentability of all claims of the Asserted Patent. *Parus v. Schwab*, No. 2:21-cv-00393, Dkt. 127-1 (E.D. Tex. filed Oct. 3, 2023). The court lifted the stay on October 12, 2023. *Parus v. Schwab*, No. 2:21-cv-00393, Dkt. 128 (E.D. Tex.). The court entered a scheduling order on December 11, 2023, Dkt. 133, which the court later amended to reflect a close of discovery on March 26, 2024 and a deadline for motions to compel on April 1, 2024. Dkt. 175.

**C.    Parus and [24]7 have an ongoing dispute regarding source code.**

On January 4, 2024, Parus informed [24]7 that it intended to send reviewers to analyze the

---

[3] For avoidance of doubt, John Picone, Jennifer Coleman, Robert Jain, Jing "Gene" Cherng, and Jeffrey Ratinoff have represented themselves as representing all three entities—Capital One, Fidelity, and [24]7—throughout the Delaware and Eastern District of Texas.

McKool Smith, P.C.
Los Angeles, CA

1    produced code in ten business days. Ex. 14. While the protective order maintains that only seven

2    days are required, Defendants informed Parus a week after Parus' initial communication stating that

3    they would require twelve business days, nor would they provide the programming language used in

4    the code base. *Id.*

5        Upon review, it became clear that the code base was improperly limited as produced. Parus

6    sent numerous emails and letters over the next month and a half requesting the production of the

7    deficient code. *See, e.g.,* 8 at 2; Ex. 15; Ex. 16; Ex. 17]; Ex. 18; Ex. 2.

8        In summary, [24]7 has produced substantial amounts of code in a format which is ***not*** human

9    readable and ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████

11   ██████ nor have they converted the files themselves. Additionally, [24]7 has not produced ██████

12   ████████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████ Parus has attempted to resolve

14   the dispute without the intervention of the Court, but was informed by counsel for [24]7 (and

15   Defendants) on March 29, 2024 that the Parties were at an impasse regarding the production of

16   source code.

17   **III.    LEGAL STANDARD**

18       **A.    Compulsion of Discovery**

19       Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena. Rule 45

20   provides that a party may command a non-party to testify at a deposition and "produce designated

21   documents, electronically stored information, or tangible things in that person's possession, custody,

22   or control" Fed. R. Civ. P. 45 45(a)(1)(A)(iii).

23       Rule 26 allows a party to obtain discovery concerning any nonprivileged matter that is

24   relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Information is relevant when it

25   will be admissible at trial or when the evidence is "reasonably calculated to lead to the discovery of

26   admissible evidence." *Id.* The Rule 26 relevancy standard also applies to third-party subpoenas.

27   *Beinin v. Ctr. for Study of Popular Culture*, No. 06-cv-02298 JW (RS), 2007 WL 832962, at *2

28   (N.D. Cal. 2007).

McKool Smith, P.C.
Los Angeles, CA

1    "On motion to compel discovery … the party from whom discovery is sought must show

2    that the information is not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P.

3    26(b)(2)(B). Once the moving party establishes that the materials requested are within the scope of

4    permissible discovery, the burden shifts to the party resisting discovery to demonstrate why the

5    discovery is irrelevant, overly broad, or unduly burdensome or oppressive. *Id.* (quoting *SSL Services,*

6    *LLC v. Citrix Systems, Inc.*, 2010 WL 547478 at *2 (E.D. Tex. Feb. 10, 2010)). In the event that a

7    commanded party has failed to comply with a subpoena, the court for the district where compliance

8    is required must enforce this duty and impose an appropriate sanction—which may include lost

9    earnings and reasonable attorney's fees—on a party or attorney who fails to comply. Fed. R. Civ. P.

10   45(d)(1).

11          In patent infringement cases, source code is routinely relevant to the prosecution or defense

12   of a case.  *See MVS Studio Inc. v. Bingo Bean, LLC*, No. CV 10-07675 JHN SSX, 2011 WL

13   10538669, at *2 (C.D. Cal. June 24, 2011) ("Plaintiffs are entitled to access information that is

14   relevant to proving or disproving their allegations....This generally includes the disclosure of raw

15   data (***source code***, schematics, formulas, etc.) sufficient to show the operation of the accused aspects

16   of the products in order to allow the patentee to make it's [sic] own determinations as to

17   infringement.") (internal citations and quotations omitted) (emphasis added); *see also Drone Techs,*

18   *Inc. v. Parrot S.A.*, 838 F.3d 1283, 1294-1301 (Fed. Cir. 2016).

19          **B.    Transfer**

20          "A district court whose only connection with a case is supervision of discovery ancillary to

21   an action in another district should be especially hesitant to pass judgment on what constitutes

22   relevant evidence thereunder." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211-12

23   (Fed. Cir. 1987) (vacating and remanding a district court's order quashing a subpoena seeking

24   discovery of sales information from a nonparty to a patent infringement case). Thus, Rule 45(f)

25   permits a court where compliance with a subpoena is required to "transfer a motion under this rule to

26   the issuing court if the person subject to the subpoena consents or if the court finds exceptional

27   circumstances." FED. R. CIV. P. 45(f). For example, transfer may be warranted "in order to avoid

28   disrupting the issuing court's management of the underlying litigation, as when that court has

1    already ruled on issues presented by the motion or the same issues are likely to arise in discovery in

2    many districts." FED. R. CIV. P. 45(f) advisory committee's note to 2013 amendment.

3        Courts in this District and elsewhere have granted relief under Rule 45(f). E.g., *Moon*

4    *Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 430 (N.D. Cal. 2014) ("[R]uling on

5    the motion to compel would require the [N.D. Cal.] to duplicate review already conducted . . .

6    Moreover, the District of Arizona is in a better position to rule on these motions due its familiarity

7    with the issues involved.") ; *MAO-MSP Recovery II LLC, et al. v. Mercury General Corp.*, No. 1:19-

8    MC-91176-ADB, 2020 WL 5732332, at *3 (D. Mass. Sep. 24, 2020) (denying a motion to quash and

9    transferring the subpoena to the issuing court where the issuing court "[was] is in a unique position

10    to resolve this discovery dispute efficiently and in a manner that ensures that similarly situated

11    assignors are treated consistently"); *F.D.I.C. v. Everest Reinsurance Holdings*, No. 1:13-MC-381,

12    2014 WL 260589, at *2-3 (S.D.N.Y. Jan. 23, 2014) (transferring after weighing "considerations of

13    judicial efficiency and comity"); *Google LLC v. Uniloc USA, Inc.*, No. 1:20-MC-0243, 2020 WL

14    1667376, at *2 (W.D. Tex. Apr. 3, 2020) (transferring subpoena-enforcement action to Eastern

15    District of Texas because "the underlying cases are a complicated series of patent cases involving

16    complex relationships between parties and nonparties and their interests in the patents in issue").

## IV.    ARGUMENT

### A.    The Eastern District of Texas is in a Better Position to Evaluate the Parties' Dispute

20        The Court should transfer this Motion to the Eastern District of Texas. Rule 45(f) allows the

21    transfer of subpoena-related motions to the issuing court upon the enforcement court's finding of

22    exceptional circumstances. FED. R. CIV. P. 45(f); *see also* FED. R. CIV. P. 45(f) advisory committee's

23    note to 2013 amendment (stating that "transfer may be warranted in order to avoid disrupting the

24    issuing court's management of the underlying litigation, as when that court has already ruled on

25    issues presented by the motion or the same issues are likely to arise in discovery in many districts.").

26    Exceptional circumstances exist here. The Texas issuing court has already addressed the issues

27    raised in this matter, as this case has been litigating in the Eastern District of Texas for three years.

28    Moreover, [24]7 would not be substantially burdened by dealing with this issue in the Eastern

1   District of Texas, as they share common counsel with Capital One and Fidelity, who are actively

2   involved in the Eastern District of Texas litigation.

3         First, as [24]7 has already established that it plays a role within the Accused Products, and

4   will be effected by any determination of infringement, [24]7 will inherently need to deal with the

5   problem of infringement. Therefore, the Court would likely need to evaluate the sufficiency of the

6   evidence regarding infringement. The Court within the Eastern District of Texas, who has already

7   performed analysis regarding the construction of the claims, is in a better position to fully evaluate

8   the evidence presented by the Parties.

9         Additionally, resolving this discovery dispute in the same Texas court can best serve the

10  interests of efficiency and judicial economy. *See Vinton Steel, LLC v. Commercial Metals Co.*, No.

11  3:22-MC-452, 2023 WL 2518881, at *5 (W.D. Tex. Mar. 14, 2023) (transferring subpoena-

12  enforcement action because plaintiff served similar subpoenas on other third-parties and "the risk of

13  potentially inconsistent rulings by multiple courts presents exceptional circumstances warranting

14  transfer"). Under these facts, the Texas court will be "in a unique position to resolve this discovery

15  dispute efficiently and in a manner that ensures that similarly situated [entities] are treated

16  consistently." *MAO-MSP*, 2020 WL 5732332, at *3.

17        Finally, [24]7's interests in local resolution of the subpoena (to the extent they even exist) are

18  substantially outweighed by the interests of having the Eastern District of Texas issue consistent

19  rulings and not wasting judicial resources around the country. *See* Fed. R. Civ. P. 45(f) advisory

20  committee's note to 2013 amendment ("Transfer is appropriate only if such interests outweigh the

21  interests of the nonparty served with the subpoena in obtaining local resolution of the motion. Judges

22  in compliance districts may find it helpful to consult with the judge in the issuing court presiding

23  over the underlying case while addressing subpoena-related motions."). Besides residing in

24  California, [24]7 has no specific interest in complying with the subpoena in California. [24]7's

25  primary counsel (SpencerFane) not only has offices in Texas, but also serves as counsel to Fidelity

26  and Capital One in the Eastern District of Texas litigation. Therefore, [24]7 will not even need to

27  hire additional counsel in the Eastern District of Texas. Further, [24]7 produced source code for

28  Parus' review in Houston, Texas. *MAO-MSP Recovery*, 2020 WL 5732332, at *3 ("With respect to

1   responding to document requests, the fact Fallon has no employees or place of business in California

2   is of little consequence as document discovery will no doubt be conducted primarily, if not

3   exclusively, electronically."). Thus, the interest in enforcing the subpoena in California is minimal

4   and substantially outweighed by the interests in enforcing the subpoena in Texas.

5         The Eastern District of Texas issuing court, which has already ruled on similar issues, is

6   familiar with the patent and technology, and is likely to hear the same issue multiple times due to the

7   importance of the source code. Transfer will save judicial resources and provide consistent guidance.

8   **B.      Parus' Requests Are Proportionate to the Needs of the Underlying Case.**

9         [24]7 objects on the ground that Parus' requests are disproportionate to the needs of the case.

10  But [24]7 need look no further than its own customers, Capital One and Fidelity, to understand the

11  nature of the underlying litigation. [24]7 is not blind to the reality of this litigation, having stated in

12  its Delaware complaint that: "[24]7 is informed and believes, and based thereon allege, that the

13  'accused instrumentalities' referenced by Parus in its infringement allegations against Capital One

14  and Fidelity in the respective Texas Cases includes [24]7's IVR product that [24]7 provided pursuant

15  to [24]7's contractual agreements with Capital One and Fidelity." Ex. 1 at ¶ 8. [24]7 further

16  contended that: **"All necessary software and hardware** used to provide [24]7's IVR product to

17  Capital One's and Fidelity's respective customers is owned, controlled, and/or maintained by [24]7

18  at data centers located in California and Virginia and/or in one or more proprietary code

19  repositories." *Id.* at ¶ 8. Lastly, 24[7] contended that it has "contractual obligations to indemnify all

20  their customers for third-party patent infringement claims that are directed toward [24]7's IVR

21  platform and services." Ex. 3 at 4. Indeed, [24]7 openly asked the District of Delaware to declare

22  that [24]7 itself did not infringe in relation to this litigation, for which it now refuses to produce

23  source code highly relevant to infringement.

24        In determining whether the scope of requested discovery exceeds the needs of a case, courts

25  consider "the importance of the issues at stake in the action, the amount in controversy, the parties'

26  relative access to relevant information, the parties' resources, the importance of the discovery in

27  resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

28  likely benefit." Fed. R. Civ. P. 26(b)(1). Here, each factor weighs in favor of compelling [24]7 to

McKool Smith, P.C.
Los Angeles, CA

1    produce the requested source code.

2        **C.      [24]7 Is A Financially Interested Third-Party.**

3            Rule 45 typically affords third parties relief from subpoenas that impose an "undue burden or

4    expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). While [24]7 is nominally a

5    third-party, it has a significant and articulated financial interest in the outcome of the litigation,

6    having contended in its Delaware complaint that: "Should Parus prevail on its infringement claims

7    against Capital One and Fidelity, [24]7 would suffer harm, including pecuniary loss, loss of

8    prospective business relations with its IVR customers, and uncertainty surrounding the use of IVR

9    platform by its customers." Ex. 1 at ¶ 11.

10           Courts in this District have recognized interested third parties—like [24]7—are not afforded

11   the same Rule 45 protection as disinterested third parties. In considering the burden and costs

12   associated with a third-party subpoena issued to FedEx, Judge Illston observed that "[t]he Rule is

13   aimed at protecting persons who are disinterested, and thus have little to gain from their outlays in

14   compliances cost." *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188-SI, 2015 U.S. Dist.

15   LEXIS 105450, at *13-14 (N.D. Cal. 2015) In collecting case law on the issue, the Court concluded

16   that "given FedEx's direct interest in the outcome of the litigation, and its ability to bear some costs,

17   the Court cannot conclude that the expenses it incurred imposed a significant burden warranting

18   Rule 45 protections." *Id*. at *14-15 (internal citations and quotations omitted). Here, too, [24]7's

19   significant financial stake in the underlying condition tempers the protections typically afforded by

20   Rule 45.

21       **D.      The Entire Source Code is Discoverable Pursuant to Rule 26**

22           Rule 26 of the Federal Rules of Civil Procedure allows for discovery regarding any matter

23   "that is relevant to the claim or defense of any party" and "appears reasonably calculated to lead to

24   the discovery of admissible evidence."  FED. R. CIV. P. 26(b).  The source code of [24]7's Accused

25   Product  is  unquestionably  related  to  Parus'  claim  for  patent  infringement  (and  [24]7  has

26   acknowledged this in Court pleadings).  *See* Ex. 1 at ¶ 10. As such, the entire source code is

27   discoverable under Rule 26.

28           The Northern District of California faced the question of the discoverability of the entire

McKOOL SMITH, P.C.
LOS ANGELES, CA

source code in *Forterra Sys. v. Avatar Factory*, No. C-05-04472 PVT, 2002 U.S. Dist. LEXIS 63100 (N.D. Cal. Aug. 22, 2006).  In that case, the patentee, Forterra, sought production of the entire source code for the accused product.  *Id*. at **1–2.  The court held that the "Federal Rules of Civil Procedure allow broad discovery" and that "the entire source code is relevant under Rule 26[.]"  *Id*. at *4 (emphasis added).  The only inquiry for the court was whether, under Rule 26(b)(2)(iii), the burden to the producing party outweighed the benefit to the plaintiff.  *Id*.  The court found that the risk of inadvertent disclosure of source code did not outweigh the benefit obtained by Forterra in having access to the entire source code.  According to the court, "[b]ecause the source code is at the heart of the dispute, [plaintiffs'] expert must have access to the entire source code."  *Id*. at *4 (emphasis added).

As in *Forterra*, in this case the source code for the accused products is at the heart of the infringement dispute.  While *Forterra* is not a dispute with a third-party, it is still relevant here as [24]7 is not a disinterested third-party, but involved and effected by this litigation. *See infra* at IV.C. Plaintiffs' experts must have access to the entire source code to conduct a thorough analysis of the Accused Functionality.  See *Forterra Sys.*, 2002 U.S. Dist. LEXIS at *3-4.   Because the entire source code is discoverable under Rule 26, [24]7 should be compelled to produce the entire source code for the accused products.

Any burden to [24]7 in producing its entire source code is substantially outweighed by the benefit to Plaintiffs in obtaining the entire source code.  A balancing of the scale on this issue tips decidedly in favor of compelling disclosure.  [24]7 will not suffer any harm in producing its source code and any potential harm to [24]7 caused by the disclosure of the entirety of its source code for the accused products is eliminated by the Agreed Protective Order in this case, which provides for heightened protection for source code.   In addition, [24]7 will not suffer any undue burden in producing its source code.  In fact, it is highly likely that the burden to produce the entire source code is significantly less than attempting to cherry pick the source code for piecemeal production as [24]7 has attempted to do.  On the other hand Plaintiffs' need for the entire source code is great and will aid Plaintiffs' experts in examining the Accused Products.

### 1.     Producing the Entire Source Code Will Not Harm [24]7.

McKool Smith, P.C.
Los Angeles, CA

1      An Order directing [24]7 to produce the entire source code for the Accused Product will not

2  harm or prejudice [24]7.   By agreement of the parties and Order of this Court, several protections

3  have been put in place to ensure the confidentiality and secrecy of [24]7's code.

4      The Protective Order, agreed to by the parties and entered by the Court, addresses the review

5  of source code in detail and places limits on when, where, and how it can be reviewed.  Ex. 19 at

6  ¶10.  The source code is kept under lock and key at the offices of [24]7's counsel in Houston, and

7  Parus must give prior notice before its code reviewers can review the source code.  The source code

8  is kept by [24]7's outside counsel in an office that locks whenever the door is pulled closed, on

9  computers that are enclosed in locked cages, and are not connected to any network.  Everything that

10  is printed from these computers is logged and Bates-stamped, whether it is source code or not.  The

11  source code reviewers sign in and sign out each day under supervision and must request documents

12  they may desire to print.  In addition, as required by the Protective Order, Parus disclosed each

13  source code reviewer for vetting by [24]7 and Defendants.  Further, each reviewer must sign the

14  confidentiality agreement attached to the Protective Order, and each one has.  Finally, in his

15  Declaration, Dr. Romberg reiterated his commitment to protecting [24]7's source code. Ex. 26.

16  [24]7 should not be permitted to withhold the source code for the accused products, particularly in

17  light of the safeguards imposed by the Protective Order.  *See Forterra Sys.*, 2002 U.S. Dist. LEXIS

18  at *4.

19      **2.    Piecemeal Production of the Source Code Has Increased the Time and**
20          **Expense to Analyze the Accused Products.**

21      In general, producing the entirety of the source code is no more (and probably less)

22  burdensome than producing piecemeal portions of the source code.  *See* Ex. 26.  [24]7 is familiar

23  with the entirety of its own source code used in the Accused Product, and there is no legitimate

24  reason that it could not easily provide its own source code.  Instead, [24]7 elected to analyze and

25  extract the source code they were willing to produce and then reconsider future requests as Parus

26  identified specific files mentioned, but not produced.  [24]7 has undertaken this process at least

27  twice so far.  *Id*.  It would have been (and remains) easier to simply produce the entirety of the

28  source code for the accused products. [24]7's piecemeal production of source code has made the

McKool Smith, P.C.
Los Angeles, CA

1   identification of "specific" missing files a repetitive task that only serves to delay the substantive

2   review of the source code. *Id.* at ¶ 13.  Since Parus' code reviewers are not familiar with all of the

3   source code for the Accused Product, Parus' code reviewers █████████████████████████

4   ███████████████████████████████████████████████████████████████

5   ███████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████████

9   ████████████████████████████████████ [24]7 refused to produce

10  the missing files. Ex. 20. Even if it did, ██████████████████████████████████

11  ████ needed to assess how the Accused Product performs the infringing operations.  This never-

12  ending process has increased the time and expense to review the source code for the accused

13  products.

14          In an attempt to work with [24]7, Parus' source code reviewers tried to identify the file

15  names that may contain source code.  To do so, they identified some of the ████████████████

16  ████████████████████████████████████, including but not limited to:

17          a.      A file called █████████████████████████████████████

18          ████  ████  ████  ████  ████  ███████  █  ███████  ██████

19          ███████████████████████████████████████████████████████████

20          ███████████████████████████████████████████████████████████

21          ███████████████████████████████████████████████████████████

22          ███████████████████████████████████████████████

23          b.      Similarly, ████  █████████  ████  ███████  █████████  ████

24          ███████████████████████████████████████████████████████████

25          ███████████████

26          c.      The █████████████████████████████████████████

27          ███████████████

28          d.      We have a file called ████████████████████████████████████

McKOOL SMITH, P.C.
LOS ANGELES, CA

1   ████████████████████████████████████████████████████

2   ████████

3   e.   The ███████████████████████████████████████████

4   ████   ████   ██████████   █████   ████   ████   █   ███████

5   ██████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████████

7   █████████████████████████████████████

8   f.   The file ███████████████████████████████████████

9   ██████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████

11  ████████

12  Ex. 2 at 4. Additionally, Parus has not only identified the non-human readable code, but also

13  provided an outline for how such code can be converted into human readable format ████████████

14  ███████████████████████████████████ Now, [24]7 refuses to produce these files.

15  Therefore, [24]7 should produce the *entirety* of the source code or, at least, the missing files

16  identified by Parus along with the requests below.

17          **3.      Human-Readable Formatting is Essential, Available, and Necessary.**

18          While [24]7 has produced *some* ███████████████████████████████████████

19  otherwise non-human readable formatting. ████████████ are relevant to infringement. The '723

20  Patent requires the use of "alternative intuitive descriptions," ███████████████████████

21  ████████[4]:

22          1. A voice-enabled system for managing communications transmitted through a

23          network, said system capable of receiving natural voice commands from a user, said

24          system comprising:

25                  a computer;

26

27                  at least one set of stored commands operatively associated with said computer,

28  ─────────────────────

[4] ████████████████████████████████████████████████

McKool Smith, P.C.
Los Angeles, CA

each said set including a plurality of stored commands each of said commands in said set corresponding to a single voice-enabled function for managing communications, each said command in said set being an alternative intuitive description of said single Voice-enabled function;

…

Cl. 1. As the ███████ represent the alternative intuitive descriptions, they are essential for the establishment of infringement. There are two current errors related to the ██████: (1) the production is incomplete and (2) the produced files are not in a human readable format.

**Files Not in Human Readable Format.** Source code can be produced in both human readable and computer readable format. However, for review by *human* reviewers, as necessary in litigation, the files must be produced in a format which is human readable. The current ████████ █████████████████████████████████████████████████████████████████ is not in a human readable format. Ex. 17. Parus has repeatedly requested that these files, and all other files, be produced in human readable format.

We understand that many of these ████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████ Ex. 23. [24]7 states that "[24]7 will not produce any more source code, beyond what it has already produced." Ex. 20. Therefore, Parus is requesting that [24]7 either produce the converted, human readable, ███████
███████████████████████████████████████████████████
████████████

**Missing** ███████ Within the provided source code, ████████████████████
████████████████, which have not yet been produced. Ex. 2 at I.1(a-b). Parus has identified these files essentially by name since March 15, 2024. Ex. 16. [24]7 states that "[24]7 will not produce any more source code, beyond what it has already produced." Ex. 20. Therefore, Parus is requesting that

McKool Smith, P.C.
Los Angeles, CA

[24]7 produce *all* ████████████████, regardless of whether Parus has specifically identified such files. *See supra* IV.D.2.

**4.    The** ████████████████████████████████

████████████████████████ ██████████.

Further related to the ████████████████████████████

████████████████████████████████████████████

████████████████ are highly relevant to infringement. Claim 17 of the '723 Patent requires a logic flow:

> 17. The system of claim 1 further comprising:
>
> a set of prompts audible to said user, and
>
> **a logic flow** for transmitting said prompts to said user in a pre-determined manner in response to said user accessing said system or said user providing a natural voice command.

(emphasis added). The "logic flow" is ████████████████████████. For example, the ████████ ████████████████████████████████████████ ████████████████████████:



*See, e.g.*, Ex. 25, Ex. 26. Parus has requested the ████████████ at least three times. *See* Ex. 15; Ex. 16;

McKool Smith, P.C.
Los Angeles, CA

Ex. 2]. However, 24]7 states that "[24]7 will not produce any more ▮▮▮▮ source code, beyond what it has already produced." Ex. 20.

## V.   CONCLUSION

For the foregoing reasons, Parus respectfully requests that the Court either transfer this motion to the Eastern District of Texas or, in the alternative, compel [24]7 to comply with the production of Document Requests 1 and 2 by producing: (1) ▮▮▮▮▮▮ in a human readable format **or** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

DATED: April 1, 2024                          Respectfully submitted,


                                             By: */s/ Alan P. Block*

                                             Alan P. Block
                                             California State Bar No. 143783
                                             ablock@McKoolSmith.com
                                             **MCKOOL SMITH, P.C.**
                                             300 S. Grand Avenue, Suite 2900
                                             Los Angeles, California 90071
                                             Telephone: (213) 694-1200
                                             Facsimile: (213) 694-1234

                                             ***ATTORNEYS FOR PLAINTIFF***
                                             ***PARUS HOLDINGS, INC.***

McKOOL SMITH, P.C.
LOS ANGELES, CA

---

[5] *See supra* page 1, n. 2.